UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK L. OWENS,

    Plaintiff,

v.                                  Case No. 1:12-cv-47
                                  Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                    /

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on June 17, 1963 (AR 144).[1] He completed the 11th grade and completed special job training (truck driving) (AR 154). Plaintiff alleged a disability onset date of September 1, 2008 (AR 144). He had previous employment as a truck driver, assistant manager (gas station), carpenter, construction contractor, cook and painter (AR 157). Plaintiff identified his disabling conditions as: a six-inch plate in the lower left leg since age 19, limiting his ability to lift, walk, stand, bend, kneel and get up; instability in the plate (he feels the plate and screws move); problems with his knees, back and shoulders; loss of ability to grip with his hands; and his hands go numb (AR 149). According to plaintiff, these conditions limit his ability to work as follows:

---

[1] Citations to the administrative record will be referenced as (AR "page #").

> Getting up and down is hard to do without something to aid me. Walking hurts constantly every step. When my arm goes numb I can't hold or feel anything at all. This lasts for about 3 to 5 minutes. Sometimes longer. I can't stand or sit for very long. There are times when I cannot even get out of bed because I hurt so much. Pain and fatigue are a constant battle. They are becoming more progressive every day. I have not seen a doctor for any of this because it is preexisting and insurance won't cover anything that pertains to this condition.

(AR 149). On December 10, 2010, an Administrative Law Judge (ALJ), reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 15-21). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in

the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant

3

number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of September 1, 2008 (AR 18). At step two, the ALJ found that plaintiff was "severely impaired" under the existing law "particularly by degenerative spinal changes, residuals of an injured left leg, and obesity" (AR 18). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 18-19).

The ALJ decided at the fourth step that plaintiff has the residual functional capacity (RFC):

> to perform the requirements of at least a wide range of light work that would not involve sitting for more than two hours at a time, standing for more than an hour, walking more than fifty yards, or lifting more than fifty pounds.

4

(AR 20). The ALJ further found that plaintiff could not perform any of his past relevant work (AR 20).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of jobs in the regional economy (Michigan) involving light and sedentary work (AR 20-21). The jobs involving light work included: assembler (40,000 jobs); inspector (25,000 jobs); and packager (5,000 jobs) (AR 20-21). The jobs involving sedentary work included: assembler (6,000 jobs); and inspector (2,500 jobs) (AR 21). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act "based on the applications protectively filed on October 8, 2009" (which listed an alleged onset date of the September 1, 2008) and that plaintiff "is not eligible for supplemental security income" (AR 21).

### III. ANALYSIS

Plaintiff did not set forth a statement of errors as directed by the court. *See* Notice (docket no. 8). However, the court has gleaned four issues raised in the body of plaintiff's brief.

#### A. The ALJ failed to follow the treating physician rule

Plaintiff contends that the ALJ improperly rejected the opinions of a treating physician, David Kass, M.D. On June 1, 2010, Dr. Kass completed a "Multiple Impairment Questionnaire" submitted by plaintiff's attorney (AR 274-82). In response to this questionnaire, Dr. Kass indicated: that plaintiff was in constant daily pain which the doctor rated as "8" on a scale of "10" (i.e., "moderately severe"); that in an eight-hour day, plaintiff could sit for no more than one hour and stand/walk for no more than 1 hour; that plaintiff should not sit continuously in a work setting; and, that plaintiff must "get up and move around" every 1 to 2 minutes (AR 277). Plaintiff

5

contends that these limitations excluded the performance of sedentary work (the lowest exertional level of work recognized in the regulations), which is defined as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a); 416.967(a). Dr. Kass completed another form on July 29, 2010, which included different restrictions (AR 305-313).

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). If a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory

6

diagnostic techniques and is not inconsistent with the other substantial evidence in your case," then the agency will give the opinion controlling weight. 20 C.F.R. § 404.1527(c)(2) .

An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

As an initial matter, the ALJ noted that plaintiff had been able to work for years with his underlying medical conditions:

> Notably, the claimant's impairments have largely been of a longstanding nature [his back, leg, and hand/wrist problems have apparently been present for at least twenty years]. Nevertheless, he was not precluded from working in physically demanding jobs in the interim (at least until his alleged onset date); and the recent objective findings do not indicate debilitating changes.

(AR 19).

The ALJ found that under plaintiff's self-reported limitations, plaintiff could still lift up to 50 pounds and engage in a variety of daily activities:

> As set forth in the consultative examination report of February 12, 2010 from Dr. R. Scott Lazara, the claimant stated that he was then still able to stand for an hour, walk fifty yards, sit for two hours, and lift fifty pounds; and that he remained active-in spite of his complaints, he was spending most of his time doing household chores and visiting friends (Exhibit 5F). Dr. Lazara noted that the claimant had difficulty with orthopedic maneuvers, but the difficulty was attributed to

7

"deconditioning and his body habitus." It was noted that he was not involved in any ongoing therapy or other treatment, and that he did not require an assistive device. Shortly before, Dr. David 1. Kass had reported in December 2009 (when he initially established treatment as the primary care physician) that the claimant would in fact be unable to perform "manual" or "physical" labor [such as his past truck driving work] - although "moderate physical activity" was nevertheless recommended (Exhibits 3F, 4F).

In that regard, Exhibits 4E, 5E, and 5F show, along with the testimony, that throughout, the claimant has remained able to engage in a variety of normal day-to-day activities (many of which are consistent with at least a light level of exertion), such as: managing his personal care, cooking, doing dishes and laundry, cleaning, performing household repairs, taking care of his dog, driving, shopping, handling money and paying bills, caring for his daughter, visiting friends, attending local sporting events, hunting, fishing, and doing yard work. He noted at the hearing that non-narcotic medication helps his symptoms.

(AR 19).

Given this background, the ALJ addressed Dr. Kass' opinions as follows:

According to the functional assessments from Dr. Kass in Exhibits 9F and 14F (prepared on June 1 and July 29, 2010, respectively), the claimant would be unable to perform the regular requirements of even sedentary work, due to nagging back, leg, and hand/wrist symptoms, along with moderate or severe fatigue. Moreover, it was said that the claimant's symptoms would be severe enough to interfere with his attention and/or concentration on a frequent or even constant basis. The various checklist "assessments" are inconsistent with each other and extreme in their magnitude.

Dr. Kass reported on both forms that the claimant would not be able to sit, stand, or walk for more than an hour in any given eight-hour workday; and that he would not be able to lift as much as ten pounds more than occasionally. Dr. Kass added that the claimant's back and leg symptoms can be aggravated by either sitting or weight bearing, such that he must change position frequently (or even constantly) - in Exhibit 9F [the June 1, 2010 questionnaire], it was even noted that he would need to be able to move every one or two minutes (modified to every ten or fifteen minutes in Exhibit 14F [the July 29, 2010 questionnaire]). In both instances, Dr. Kass further noted that the claimant would be unable to perform any exertional postural activities (bending, stooping, pushing, etc.). Dr. Kass also indicated in Exhibit 9F that the claimant would be moderately (significantly) limited in using his upper extremities [although he would still be able to lift up twenty pounds occasionally]; and then in Exhibit 14F, it was noted that he would indeed be

8

<u>markedly</u> limited in that respect, or essentially precluded from using his arms or hands for any competitive purpose.

However, the functional assessments do not reflect the indicated positive surgical results or the balance of the objective findings and treatment notes (even the earlier reports from Dr. Kass himself), and are clearly inconsistent with the claimant's admitted activity level and his functional capability as claimant himself characterized it. As a result, the assessments cannot be considered determinative here. Of note, the undersigned observed that, in spite of his reported need to change position frequently, the claimant sat without apparent difficulty for nearly the entire hearing, taking only one break of less than a minute to get up (despite being instructed by his representative that he could stand as needed).

(AR 19-20) (emphasis in original).

In criticizing the ALJ's decision, plaintiff contends that the ALJ did not consider the factors enumerated in 20 C.F.R. §§ 404.1527(c)(2)-(5) and 416.927(c)(2)-(5) before rejecting Dr. Kass' opinions.[2] Plaintiff cites *Cole v. Astrue*, 652 F.3d 653, 659 (6th Cir. 2011) for the proposition that "ALJ's are required to consider these factors." Plaintiff's Brief at p. 10. The *Cole* opinion cited by plaintiff has been withdrawn. The amended opinion appears as *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011), and provides in pertinent part as follows:

> If the ALJ declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004) (citing 20 C.F.R. § 404.1527(d)(2)).

*Cole*, 661 F.3d at 937.

In performing his review, the ALJ did not address all of the factors set forth in *Cole* and *Wilson*, i.e., the length of the treatment relationship, the frequency of examination, the nature

---

[2] The court notes that plaintiff referred to these sections under their previous designations of 20 C.F.R. §§ 404.1527(d) and 416.927(d). *See* Plaintiff's Brief at p. 10.

9

and extent of the treatment relationship or the specialization of the treating source. *See Cole*, 661 F.3d at 937; *Wilson*, 378 F.3d at 544. While the ALJ's failure to give good reasons for not crediting a treating physician's opinion generally "does not constitute harmless error," there are situations in which the ALJ's violation of the procedural requirement of § 404.1527(c)(2) may be harmless error. As the Sixth Circuit explained:

> That is not to say that a violation of the procedural requirement of § 1527(d)(2) [now § 1527(c)(2)] could never constitute harmless error. We do not decide the question of whether a *de minimis* violation may qualify as harmless error. For instance, if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe § 1527(d)(2) [now § 1527(c)(2)] may not warrant reversal. *Cf. NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (plurality opinion) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game"). There is also the possibility that if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant. Or perhaps a situation could arise where the Commissioner has met the goal of § 1527(d)(2) [now § 1527(c)(2)] - the provision of the procedural safeguard of reasons - even though she has not complied with the terms of the regulation. . .

*Wilson*, 378 F.3d at 547.

The court concludes that this case is one of the limited circumstances in which the ALJ's failure to strictly comply with § 1527(c)(2) constituted harmless error. The ALJ rejected Dr. Kass' June 1, 2010 opinion based upon the inconsistency with the doctor's later opinion of July 29, 2010, positive surgical results, and plaintiff's rather extensive daily activities. In reaching this decision, the ALJ noted that plaintiff's spinal changes were minor, did not cause significant neurological deficits, and that the plaintiff was not required to have back or leg therapy since at least the alleged disability onset date (AR 18, 235-41, 246-54, and 264-73). With respect to the carpal tunnel release surgery, the ALJ noted that plaintiff had only "mildly decreased" dexterity before the

surgery and that while plaintiff asserted that he has numbness in his hands, the surgical results yielded noticeable improvement and the surgeon did not give plaintiff any long term hand-related restrictions (AR 19, 246-54 and 289-301). Furthermore, the ALJ relied on plaintiff's limitations as plaintiff himself reported to Dr. Lazzara at the February 12, 2010 consultative examination:

> The patient has not worked since July of 2008. . . He now lives with his daughter in a home. He is able to do activities of daily living. He is able to drive. He is able to cook, do household chores and yard work. He now mostly spends time doing household chores and visiting with friends. He states he does have difficulty climbing stairs. He can sit about 2 hours, stand about an hour and walk about 50 yards. He can still lift about 50 pounds.

(AR 20, 250).

In light of plaintiff's self-reported limitations, which were entirely inconsistent with Dr. Kass' extensive limitations, the ALJ could consider Dr. Kass' opinion as patently deficient. *Wilson*, 378 F.3d at 547. In addition, although the ALJ did not address each of the factors in § 1527(c)(2), the court concludes that the ALJ's opinion was sufficiently detailed to meet the goal of the procedural safeguards. *Id.*

The ALJ also relied on his personal observations of plaintiff at the administrative hearing which were inconsistent with Dr. Kass' June 1, 2010 opinion that he can only sit for 1 or 2 minutes at a time. The hearing lasted close to 45 minutes (AR 28-57). In his brief, plaintiff states that he had to stand up once at about 22 minutes into the hearing. Plaintiff's Brief at p. 10. This activity is not consistent with the extreme limitations mentioned by Dr. Kass. In addition, while plaintiff now relies on the extreme restrictions set forth in Dr. Kass' June 1, 2010 opinion, plaintiff testified at the hearing that he can sit for about 10 to 15 minutes at a time (AR 37-38). Under these circumstances, the ALJ's observation (and plaintiff's own testimony) affirm the ALJ's conclusion that Dr. Kass' June 1, 2010 opinion was not supported by the evidence.

11

Plaintiff also contends that the ALJ used the discredited "sit and squirm test," i.e., that the ALJ denied plaintiff's claim for disabling pain based solely on the ALJ's observation of plaintiff at the administrative hearing. *See Martin v. Secretary of Health and Human Services*, 735 F.2d 1008, 1010 (6th Cir. 1984) ("[W]e cannot allow the dismissal of a claim for pain solely on the ALJ's observations at the hearing. This procedure amounts to the infamous and thoroughly discredited 'sit and squirm' test"). The court disagrees with plaintiff's contention. The "sit and squirm test" does not apply in this case because plaintiff's claims involved conditions other than disabling pain and the ALJ did not dismiss plaintiff's claim solely on his observations of plaintiff at the hearing. *See Martin*, 735 F.2d at 1010.

Finally, plaintiff contends that the ALJ's RFC determination is erroneous, because it reflects the ALJ's medical opinions rather than the medical opinions of plaintiff's physician, Dr. Kass. "[T]he ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart*, 192 Fed. Appx. 456, 465 (6th Cir.2006). *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996) ("The Commissioner's determination must be based on testimony and medical evidence in the record. And, as this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

In this case, the ALJ did not rely on "his own medical judgment" to determine plaintiff's RFC. Rather, the ALJ's RFC determination reflected plaintiff's limitations as plaintiff himself reported to Dr. Lazzara. Such self-reported limitations is sufficient to support the ALJ's RFC determination. *See Collins v. Commissioner of Social Security*, 357 Fed. Appx. 663, 670 (6th Cir. 2009) (the ALJ's RFC determination must be supported by substantial evidence, which may

include opinion evidence by a consultative examiner, opinion evidence by a state agency physician, treatment records and "the claimant's own testimony"). Plaintiff's claim should be denied.

### B. The ALJ failed to adequately consider plaintiff's obesity

Plaintiff contends that the ALJ failed to consider plaintiff's obesity, citing SSR 02-1p[3]. Although the agency deleted obesity from the Listing of Impairments in 20 C.F.R., subpart P, Appendix 1, the Commissioner views obesity as a medically determinable impairment that can be considered when evaluating a claimant's disability. In this regard, SSR 02-1p provides in pertinent part:

> [Even] though we deleted listing 9.09, we made some changes to the listings to ensure that obesity is still addressed in our listings. In the final rule, we added paragraphs to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems. See listings sections 1.00Q, 3.00I, and 4.00F. The paragraphs state that we consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

SSR 02-01p, 2002 WL 34686281 (Sept. 12, 2002). While SSR 02-1p provides guidance for the ALJ's in evaluating a claimant's obesity, it does not create a separate procedure requiring the Commissioner to consider obesity in every case.

---

[3] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed.Appx. 496, 498 (6th Cir. 2006), quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 549 (6th Cir.2004) (citations omitted).

13

> Social Security Ruling 02-01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, "may" increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants.

*Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411-12 (6th Cir. 2006).

Here, the ALJ found that plaintiff suffered from severe impairments including "degenerative spinal changes, residuals of an injured left leg, and obesity" (AR 18). The ALJ also reviewed six notable diagnoses. One of these diagnoses included "obesity (up to about 319 pounds, at approximately five feet six inches), with non-pitting leg edema and deconditioning" (AR 18). The ALJ also noted Dr. Lazara's observation that plaintiff had difficulty performing orthopedic maneuvers due to "deconditioning and his body habitus" (AR 19). This record reflects that the ALJ did in fact consider plaintiff's obesity in combination with plaintiff's other impairments. *See Coldiron v. Commissioner of Social Security*, 391 Fed. Appx. 435, 443 (6th Cir. 2010) (ALJ sufficiently accounted for the effect of obesity on the claimant's ability to perform sedentary work by discussing obesity multiple times in the opinion, determined that the claimant was limited by his weight and deconditioning, found that obesity was a severe impairment, and noted that the obesity contributed to plaintiff's other medical conditions); *Bledsoe*, 165 Fed. Appx. at 412 (court found that the ALJ considered the claimant's obesity when he explicitly mentioned the obesity in the finding of facts and referred to an expert's report that considered obesity, noting that "the ALJ need not make specific mention of obesity if he credits an expert's report that considers obesity"). Accordingly, the ALJ adequately considered the effects of plaintiff's obesity in deciding the disability claim.[4]

---

[4] The court notes that plaintiff cites the undersigned's Report adopted by Judge Jonker in *Rojas v. Commissioner*, No. 1:07-cv-1035, 2009 WL 465768 (W.D. Mich. Feb.24, 2009), which recommended

## C. The ALJ failed to properly evaluate plaintiff's credibility

Plaintiff contends that the ALJ did not properly evaluate his credibility with respect to his alleged disabling condition. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

---

reversal of the ALJ's decision, in part because the ALJ found that the claimant had a severe impairment of obesity and discussed the concept of obesity in general terms, but "did not identify plaintiff's level of obesity or discuss the extent to which obesity affected her ability to function." *Rojas*, 2009 WL 465768 at *7. While *Rojas* is not binding precedent, the court notes that the present case is distinguishable from *Rojas*. Unlike the ALJ's decision in *Rojas*, the ALJ's decision in the present case identified plaintiff's level of obesity (i.e., 5'6" tall and 319 pounds) and discussed the effect of plaintiff's obesity on his ability to function (e.g., the obesity affected his ability to perform orthopedic maneuvers per Dr. Lazara).

15

Plaintiff contends that the ALJ failed to analyze his credibility pursuant to SSR 96-7p, which provides in pertinent part:

> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well- reasoned determination or decision.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). An ALJ's failure to include detailed reasons in a credibility determination may constitute harmless error if the record demonstrates that the claimant had a sufficient opportunity to voice his subjective complaints and if the record shows that the ALJ took those complaints into account. *See, e.g., Spicer v. Apfel*, 15 Fed. Appx. 227, 234 (6th Cir. 2001) (the court found that such a harmless error existed when the ALJ took into account the claimant's subjective accounts of his pain on the one hand, and the objective medical evidence on the other, and concluded that the claimant was exaggerating his complaints of pain).

In this instance, the ALJ discounted plaintiff's credibility by finding contradictions among "the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. For example, the ALJ found that plaintiff's functional assessments "are clearly inconsistent with the claimant's admitted activity level and his functional capability as claimant himself characterized it" and that despite his reported need to change position frequently, plaintiff only needed one break during the course of the administrative hearing (AR 20). The ALJ also stated that "[i]n view of the objective findings and reported treatment, along with his admitted activity level, the claimant has not demonstrated that he suffers from pain or any other symptoms that could be considered disabling in severity" (AR 20).

Finally, plaintiff had an opportunity to set out his symptoms and limitations in response to questions posed by his attorney (AR 31-44) and the ALJ (49-51). The record reflects that the ALJ took those complaints into account, compared those complaints with the medical record, and then *accepted* plaintiff's statement that he could sit for about 2 hours, stand about an hour, walk about 50 yards and lift about 50 pounds (AR 18-20). Given this record, any error in evaluating plaintiff's credibility was harmless. *See Spicer*, 15 Fed. Appx. at 234. Plaintiff's claim should be denied.

### D. The ALJ relied upon flawed vocational expert (VE) testimony

Finally, plaintiff contends that the VE's testimony regarding his ability to perform other work is not supported by substantial evidence. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994). Because the purpose of the hypothetical question is to elicit testimony regarding a claimant's ability to perform other substantial gainful activity that exists in the national economy, the question does not need to

17

include a listing of the claimant's medical diagnose. "[A] hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb*, 368 F.3d at 632.

Plaintiff contends that the VE's testimony is flawed because it was based upon the ALJ's improper RFC determination. This contention is without merit because, as discussed in § III.A, *supra*, the ALJ's RFC determination was proper. Furthermore, the VE identified a number of jobs which could be performed by an individual with plaintiff's nonexertional limitations, even if that individual could lift only 10 or 20 pounds. The ALJ posed a hypothetical question to the VE which assumed the restrictions as set forth in the RFC determination (AR 20, 53). In response to this hypothetical question, the VE testified that:

> In lifting 50 pounds, we would find that usually the sit/stand option doesn't occur, because the lifting itself is going to have to be done in a postural manner, not seated. So, when we talk about the ability to sit or stand either at will or throughout the day as needed, I would say that medium work, which is 50 pounds lift [sic], is generally not available. Light duty work is, though, which is 20 pounds, if that would help you with your hypothetical.

(AR 54). The ALJ then asked for examples of light duty work which could be performed with a sit/stand option (AR 54).

In response to this hypothetical, the VE identified positions which a person requiring a sit/stand option could perform as unskilled, light work (AR 54). Those positions available in the regional economy included work as an assembler (40,000 jobs), an inspector (25,000 jobs) and a hand packager (5,000 jobs) (AR 54). In a subsequent hypothetical question, the ALJ limited those jobs to a person who could perform only sedentary work (i.e., lifting up to 10 pounds) (AR 55). Given this additional restriction, the VE testified that available positions would include assembler (6,000 to 7,000 jobs) and inspector (2,500 jobs) (AR 55). In short, the VE's testimony would support the

ALJ's decision, even if plaintiff could lift only 10 pounds (as opposed to his self-reported ability to lift 50 pounds). Accordingly, plaintiff's claim of error should be denied.

### IV. Recommendation

For these reasons, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.


Dated: February 19, 2013                     /s/ Hugh W. Brenneman, Jr.
                                             HUGH W. BRENNEMAN, JR.
                                             United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).